# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | |
|---|---|
| ROVER PIPELINE LLC, | CASE NO. 5:17-CV-239 |
| PLAINTIFF, | JUDGE SARA LIOI |
| vs. | |
| | MEMORANDUM OPINION AND ORDER |
| 10.055 ACRES OF LAND, MORE OR LESS, IN ASHLAND COUNTY, OHIO, et al., | |
| DEFENDANTS. | |

This condemnation matter comes before the Court on the renewed motion of plaintiff Rover Pipeline LLC ("Rover"), pursuant to Rule 71.1(h)(2) of the Federal Rules of Civil Procedure, to appoint a commission. (Doc. No. 599 ["Mot."].) The motion is opposed (Doc. No. 606 ["Miller Opp'n"]; Doc. No. 607 ["Dush Opp'n"]),[1] and Rover has filed an omnibus reply. (Doc. No. 609 ["Reply"].) Because the character, location, and quantity of the remaining unsettled properties, as well as the interests of justice, do not support the appointment of a commission, Rover's motion is DENIED.

## I. BACKGROUND

On February 2, 2017, the Federal Energy Regulatory Commission ("FERC") issued Rover a certificate of public convenience and necessity ("FERC Certificate") to construct a gas pipeline that will traverse several states and feed into other interstate and intrastate natural gas

---

[1] The motion (Doc. No. 608) of defendant Robert Lane to join in the two oppositions briefs is GRANTED.

pipelines. (Doc. No. 279-2 (FERC Certificate).) The Rover Pipeline Project ("Rover Project") comprises some 510.7 miles of right of way, 713 miles of pipeline, ten compressor stations and other facilities along a proposed route from certain Marcellus and Utica shale supply areas in West Virginia, Pennsylvania and Ohio to a point of interconnection with the Vector Pipeline, LP system in Livingston County, Michigan, among other interconnections existing nationally and internationally. (Doc. No. 4 (Motion for Condemnation and Immediate Possession), Ex. B, Affidavit of Joey Mahmoud ["Mahmoud Aff."] ¶ 3.)[2]

Prior to bringing the present condemnation action, Rover attempted to reach agreements with landowners regarding the easements necessary to facilitate the Rover Project and an appropriate amount of compensation. As part of these negotiations, Rover made written offers to all affected landowners and was able to voluntarily acquire 70% of the necessary easements. (Mahmoud Aff. ¶¶ 19-20; Doc. No. 4, Ex. A, Affidavit of Mark Vedral[3] ["Vedral Aff."] ¶¶ 4-9.) Plaintiff was unable to reach agreement with approximately 685 individuals who owned affected property located in the Eastern Division of the Northern District of Ohio.

As a result, on February 6, 2017, Rover filed its verified complaint in condemnation against those landowners who rejected Rover's offer of compensation.[4] The action was assigned to the undersigned jurist, who maintains a courtroom and chambers in the John F. Sieberling Federal Building and U.S. Courthouse located in Akron, Ohio. On February 7, 2017, Rover filed

---

[2] Joey Mahmoud was the Executive Vice-President of Engineering and Construction for Energy Transfer Partners and Senior Vice President of Engineering for Rover. (*Id.* ¶ 3.) It is the Court's understanding that Mr. Mahmoud no longer holds this position with Rover.

[3] Mark Vedral is the Senior Right of Way Director for Rover. (*Id.* ¶ 2.)

[4] On February 10, 2017, plaintiff filed the First Amended Complaint, adding additional party defendants. (Doc. No. 238.) On February 23, 2017, plaintiff filed the Second Amended Complaint ("SAC"), adding another defendant and appending to the pleading the documents attached to the original verified complaint. (Doc. No. 279.)

a motion for condemnation and immediate possession.

This case is one of three filed by Rover in district courts in Ohio that address the Rover Project. The second action was filed in the Western Division of the Northern District of Ohio, and a third action was filed in the Southern District of Ohio. *See Rover Pipeline LLC v. 5.9754 Acres of Land, et al.*, No. 3:17-cv-225 (N.D. Ohio, Western Division) (Carr, J.), filed February 6, 2017 ("Toledo Action"); *Rover Pipeline LLC, v. Kanzigg, et al.*, No. 2:17-cv-105 (S.D. Ohio) (Marbley, J.), filed February 6, 2017 ("Southern District Action").

On February 24, 2017, the Court held a hearing on Rover's request for condemnation and immediate possession. Representatives of Rover, its counsel, all affected landowners and, where applicable, their counsel were required to attend. During the hearing, many defendants expressed an interest in negotiating a settlement with Rover. The Court temporarily suspended the proceedings and permitted the parties to explore possible resolution. While no settlements were finalized, Rover represented that it was close to reaching agreement with many property owners. After the hearing, Rover reached settlement with many of the affected landowners. The Court ordered the remaining parties to mediation before Magistrate Judge Kathleen B. Burke on March 6, 2017.[5] (Doc. No. 316.) By the end of the mediation session, the vast majority of landowners had granted Rover the easements it sought in exchange for an agreed amount of compensation.

On March 9, 2017, this Court, in conjunction with Judge Carr, held a preliminary injunction hearing on this action and on the Toledo Action at the Akron federal courthouse. Once again, Rover's representatives, its counsel, all remaining defendants, and, where applicable, defense counsel were required to attend. At the hearing, Rover announced that it believed that it

---

[5] The chambers of Magistrate Judge Burke are also located in the Akron federal courthouse.

had reached agreement with all affected landowners regarding the issue of immediate possession.[6] Thereafter, the Court temporarily adjourned the proceedings to afford additional time for negotiations with the landowners present as to compensation. At that time, and in the weeks to follow, Rover came to terms with many other landowners as to the compensation for the takings.

In the minutes from the preliminary injunction hearing, the Court instructed Rover to "use its best efforts to reach out to counsel for the remaining defendants and/or unrepresented landowners to resolve all outstanding issues of compensation." (Minutes dated 3/10/2017.) The Court, with the assistance of the magistrate judge, also continued its efforts to assist the remaining parties to reach agreement as to compensation for the condemned properties, holding additional conferences and mediation sessions. In the end, the issue of compensation had been resolved in all but four tracts, owned by four different parties.

On October 16, 2017, Rover filed the present renewed[7] motion to appoint a commission.[8] The motion requests that a three member panel be instituted to determine the appropriate compensation to be awarded to the property owners of the four remaining tracts of land. The first tract, owned by Robert and Rita Dush ( the "Dushes") and hereinafter referred to as the "Dush Property," is the most unique of the properties as it contains a Christmas Tree farm and restaurant. The remaining three properties—the "Sloan Property," owned by the Sloan

---

[6] Because all affected landowners agreed to Rover's immediate possession of the property covered by the FERC certificate, the motion for immediate possession was subsequently withdrawn.

[7] The original motion to appoint a commission (Doc. No. 3) was withdrawn while the parties continued to explore settlement.

[8] The Court temporarily delayed resolution of the present motion while Rover and certain property owners worked through issues relative to a previously resolved settlement. (*See* Doc. Nos. 616-18, 620-21, 628.) The delay was necessary as the number of unresolved tracts factors into the analysis of whether to appoint a commission.

Revocable Trust ("Sloan Trust"); the "Lane Property," owned by Robert and Martha Lane (the "Lanes"); and the "Miller Property," owned by Carl and Sherry Miller (the "Millers"), respectively—are each used for residential and not commercial purposes. In opposing the motion, the property owners argue that a jury ought to determine just compensation.

## II. DISCUSSION

At the outset, the Court must address the argument made by the Dushes that the defendant landowners are necessarily entitled under Ohio law to a jury trial on the issue of compensation. The underlying action was filed pursuant to the National Gas Act ("NGA"), which permits:

> any holder of a certificate of public convenience and necessity . . . [to] acquire [property] by the exercise of the right of eminent domain in the district court of the United States for the district in which such property may be located, or in the State courts. The practice and procedure in any action or proceeding for that purpose in the district court of the United States shall conform as nearly as may be with the practice and procedure in similar action or proceeding in the courts of the State where the property is situated. *Provided*, that the United States district courts shall only have jurisdiction of cases when the amount claimed by the owner of the property condemned exceeds $3,000.

15 U.S.C. § 717f(h) (emphasis in original). Rule 71.1[9] sets forth the procedures to be followed in condemnation actions under federal law and provides that:

> If a party has demanded a jury, the court may instead [of conducting a jury trial] appoint a three-person commission to determine compensation because of the character, location, or quantity of the property to be condemned or for other just reasons.

Fed. R. Civ. P. 71.1(h)(2)(A). Relying on the NGA's directive to follow the "practice and procedure" for condemnation claims in the state in which the property resides, the Dushes highlight the fact that the Ohio Constitution "confers upon an Ohio citizen the constitutional

5

right to have just compensation determined by a jury in an eminent domain action[.]" (Dush Opp'n at 8733,[10] citing Ohio Const. art. I, § 19.) Because Ohio law guarantees the right to a jury trial on the issue of just compensation for state condemnation actions, the Dushes contend that they are entitled to a jury trial as well.

Yet, Rover insists that defendants have no absolute right to a jury trial because Rule 71.1 plainly provides for the appointment of a three-person commission in circumstances where "the Court concludes that the appointment of a commission is warranted." (Reply at 8748, quoting *Rockies Exp. Pipeline, LLC v. 4.895 Acres of Land*, No. 2:08-cv-554, 2008 WL 5050644, at *2, 5 (S.D. Ohio Nov. 20, 2008) (Rule 71.1 "does not create an entitlement to a jury trial").) Courts that have considered the apparent contradiction between § 717f(h) and Rule 71.1 have concluded that Rule 71.1 takes precedence over the seemingly contradictory provisions of the NGA. *See N. Border Pipeline Co. v. 64.111 Acres of Land*, No. 00 C 3122, 2000 WL 1372842, at *2 (N.D. Ill. Sept. 22, 2000) (Rule 71.1, affording a trial court discretion to appoint a commission, supersedes Illinois law guaranteeing a right to a jury); *S. Nat. Gas Co. v. Land, Cullman Cty.*, 197 F.3d 1368, 1372-73 (11th Cir. 1999) ("[Former] Rule 71A, not the practice and procedure language of § 717f(h) and not state law, governs the proceedings in the instant case.") (citations omitted).

In reaching a similar conclusion, the court in *USG Pipeline Co. v. 1.74 Acres in Marion Cty., Tenn.*, 1 F. Supp. 2d 816, 827 (E.D. Tenn. 1998), relied on the fact that advisory committee notes to prior Rule 71A indicated that the rule's purpose was to afford "a uniform procedure for all cases of condemnation invoking the national power of eminent domain, and . . . supplants all

---

[9] Rule 71.1 was originally passed as Rule 71A.

[10] All page number references are to the page identification number generated by the Court's electronic docketing system.

statutes prescribing a different procedure." The court went on to observe that "[i]nterpreting a statute with similar language requiring conformity with state practice and procedure, the United States Supreme Court found [§ 717f(h)'s] procedural conformity provision was 'clearly repealed' by Rule 71A." *Id.* (quoting *United States v. 93.970 Acres of Land*, 360 U.S. 328, 79 S. Ct. 1193, 1196 n.7, 3 L. Ed. 2d 1275 (1959) (further citation omitted)). Subsequent courts have followed suit, finding Congress's goal of providing uniformity for federal eminent proceedings clear evidence that Rule 71.1 supersedes § 717f(h). *See S. Nat. Gas Co.*, 197 F.3d at 1374-75 (relying on the advisory committee's note's emphasis on the need for uniform procedures for all federal condemnation cases to find former Rule 71A supplants the "procedures and practices" language in § 717f(h));[11] *Kanzigg* (Southern District Action), 2017 WL 5068458, at *5 ("in an effort to avoid a patchwork of different practices and procedures in federal eminent domain cases, Congress promulgated Rule 71.1, which 'superseded' the state-law-directive from § 717f(h)") (citations omitted); *5.8754 Acres of Land* (Toledo Action), 2017 WL 3130244, at *2.

The Court agrees with these prior courts that Rule 71.1 governs, not the practice and procedures language of § 717f(h) and not state law. Because at least two of the remaining property owners have requested a jury trial, the Court must schedule these matters for jury trials on the issue of just compensation, unless the court in its discretion orders that, "because of the character, location, or quantity of the property to be condemned or for other just reasons[,]" the

---

[11] In applying former Rule 71A over § 717f(h), the court in *S. Nat. Gas Co.* also relied on the maxim that "[c]ourts generally adhere to the principle that statutes relating to the same subject matter should be construed harmoniously if possible, and if not, that more recent or specific statutes should prevail over older or more general ones." *Id.* at 1373 (quotation marks and citations omitted). Because the NGA was enacted in 1938, and former Rule 71A (now Rule 71.1) was enacted in 1951, the court found that the older statute must give way. *Id.* at 1374 (citation omitted).

issue of compensation [will] be determined by a commission. Fed. R. Civ. P. 71.1(h)(2)(A). The Court now turns to the relevant factors under Rule 71.1, noting that the Court's decision ultimately rests on the "totality of the circumstances[,]" *see Rockies Exp.,* 2008 WL 5050644, at *5, with the focus of the analysis "on the overall scope of the project." *Moore's Federal Practice*, § 71.1.11(d).

Initially, the Court observes that only 4 of the more than 685 original property owners still dispute the issue of just compensation, which means that the Court would only be required to schedule, at most, 4 relatively short jury trials into its calendar. Further, the Court is familiar with counsel, the parties, and the properties remaining at issue, and, given the work already put into these cases, they can be ready for trial in short order.[12] At this point in the proceedings, this case does not present the situation where the economies of scale would favor starting over with a commission. *Compare Guardian Pipeline, L.L.C. v. 950.80 Acres of Land*, 210 F. Supp. 2d 977, 978 (N.D. Ill. 2002) (appointing commission to set compensation for "170 or 171 tracts" and noting that "with so many tracts spread over such a large area, we think a commission is preferable to a multitude of jury trials") and *N. Border Pipeline Co.*, 2000 WL 1372842, at *2 ("appointing a commission to determine the compensation issues serves the interest of judicial economy by obviating the need for [] sixteen jury trials"), with *Questar S. Trails Pipeline Co. v. 4.26 Acres of Land*, 194 F. Supp. 2d 1192, 1193 (N. N.M. 2002) (3 owners of 3 tracts of land did not support the appointment of a commission). Even the other two cases involving the Rover Project, for which commissions have been appointed, involved considerably more unresolved

---

[12] In past status conferences, counsel have reported that they believed that the remaining defendants could be ready to go to trial as soon as they obtained independent property appraisals. The Court instructed counsel to acquire the necessary appraisals as soon as practicable.

tracts of land. *See Kanzigg* (Southern District Action)*,* 2017 WL 5068458, at *10 (finding the number of unresolved tracts the most important factor supporting the appointment of a commission, inviting the reader to "consider the sheer number of affected properties. The 74 objecting defendants alone account for 140 properties to be condemned. These numbers do not account for the defendant-landowners who did not object to trying their compensation awards before a commission"); *5.9754 Acres of Land* (Toledo Action), 2017 WL 3130244, at *3 (9 remaining defendant property owners).

Despite the small number of remaining tracts, Rover maintains that a commission is still preferable to separate jury trials because of the unique circumstances surrounding the Dush Property. Given the presence of a working Christmas tree farm, and the loss of trees at different stages of growth and development, Rover insists that a jury or a commission will have to face difficult issues involving: "1) severance values—including issues of taking ranging from partial to fee; 2) issues related to commercial timber crops; 3) valuation of improvements, and 4) the alleged stigma associated with the placement of pipelines." (Mot. at 8679.) According to Rover, these issues are much better suited for determination by a commission made up of members familiar with real estate law and land valuation. (*Id*. at 8680, citing *United States v. Waymire*, 202 F.2d 550, 552 (10th Cir. 1953) (appointment of a commission is proper where the situation presents multiple circumstances calling for consideration of various elements, such as severance value, value of improvements, and other factors inherent to the situation).)

The Court finds that the fact that the Dush Property, in particular, may require the consideration and evaluation of competing expert opinions on the valuation of the condemned property does not preclude a trial by jury. It is true that some courts have cited the complexity of

the real estate issues involved as supporting the appointment of a commission. *See, e.g., EQT Gathering, LLC v. A Tract of Property Situated in Knott Cty.*, No. 12-58-ART, 2012 WL 6049691, at *1 (E.D. Ky. Dec. 5, 2012) ("the district court may choose to appoint a three-member commission if the facts are very complex"). Still, juries are regularly called upon to consider complex concepts and even conflicting expert testimony. "'To entertain doubts about a jury's ability to understand and apply in a fair manner the testimony of technical experts is to tacitly admit that the jury system is effective only in the most simple cases.'" *Bison Pipeline, LLC v. 102.84 Acres of Land*, No. 10-cv-89, 2011 WL 13112113, at *2 (D. Wyo. Mar. 4, 2011) (quoting *United States v. Certain Interests in Property in Cty. of Cascasde*, 163 F. Supp. 518, 527-28 (D. Mont. 1958)); *see Questar*, 194 F. Supp. 2d at 1193-94 (jury capable of fairly evaluating evidence involving the difference between irrigated and non-irrigated ranch land). The Court has every confidence that a jury called to determine any one of these cases will be capable of properly assessing the evidence before it and arriving at a fair adjudication. This is the trust that we place in all juries in all cases, whether the case involves issues that are straightforward or complex. Accordingly, the Court finds that the uniqueness of the Dush Property does not require the appointment of a commission.[13] *See U.S. v. 4.16 Acres of Land*, 20 F.R.D. 89, 90 (N.D. Cal. 1957) (fact that evidence of valuation would be of a "technical nature" was "not a sufficient reason to warrant the conclusion that a jury is any less capable of reaching a fair and reasonable figure than a commission").

---

[13] Rover also notes that the Millers maintain that the circumstances surrounding the condemnation of their property are unique given their home's close proximity to the pipeline. (Mot. at 8679, citing, *generally*, Miller Opp'n.) The Court finds that a jury is also capable of factoring into its just compensation calculation the location of the pipeline relative to any residences or other structures.

According to Rover, the location of the remaining properties and their owners also supports the appointment of a commission because, without a commission, landowners and witnesses will be required to travel "from counties spread out across the state" to attend trial. (Mot. at 8678.) Of course, the very fact that each of the remaining property owners opposes the appointment of a commission, and would prefer to participate in a jury trial, demonstrates that the remaining defendants do not view travel to the Akron federal courthouse as unduly burdensome. (*See* Dush Opp'n at 8735 ["the Dushes are willing and able to travel to Akron for a jury trial"]; Miller Opp'n at 8719 ["Each of the four remaining properties, including the Millers' property, are within an hour or so drive from the Court, most of which is freeway."].) Moreover, as previously noted, all of the parties and their counsel have already participated in numerous proceedings in this Court without incident or need of accommodation due to the distance.[14] Consequently, the location of the properties and their owners does not support the appointment of a commission.

Finally, Rover suggests that appointing a commission will ensure uniformity in valuation determinations, and will serve judicial economy and efficiency. Of course, the fact that each property is located in a different county—coupled with the differences in the nature and use of the properties and location of the pipeline on the properties—would likely account for any differences in the valuation of the properties and render the concern for uniform valuations a nullity. Further, the Court has already determined that, given the unique procedural posture of

---

[14] It is true that some courts have also considered the possibility that a jury would have to view the property as weighing in favor of a commission. *See, e.g., Guardian Pipeline*, 210 F. Supp. 2d at 978 (noting that a commission could more easily visit the property than a jury). Given the technology available to the parties to photograph or create videos of the condemned property, the Court does not believe that it will be necessary for any jury to travel to the property in question to determine just compensation. Consequently, the Court finds that the location of the properties, relative to the location of the courthouse, does not necessarily weigh in favor of a commission.

this case, the Court can expeditiously and efficiently resolve these few remaining cases through short jury trials.[15]

In contrast, the appointment of a commission at this late date would likely result in delayed compensation awards. While the Court would endeavor to select a commission with all due haste, the Court would expect the parties to conduct an examination of the appointees and likely file objections to particular members, given the parties' differing views on the valuation of the properties. *See Bison Pipeline*, 2011 WL 13112113, at *3; Fed. R. Civ. P. 71.1(h)(2)(C). This could result in considerable delay before any duly constituted commission was even able to begin the process of familiarizing itself with the properties and determining just compensation. Moreover, once the commission had reached its decisions on compensation and submitted its report and recommendations to the Court, the parties would be entitled, at a minimum, to lodge objections and receive a *de novo* ruling on those objections, resulting in further delays. *See* Fed. R. Civ. P. 71.1(h)(2)(D); Fed. R. Civ. P. 53(d)-(f); *see, e.g., Rockies Exp. Pipeline, LLC v. 4.895 Acres of Land*, No. 2:08-cv-554, 2010 WL 3001665 (S.D. Ohio July 30, 2010) (*de novo* ruling on objections to commission's report on compensation). This, of course, would further day final resolution of this case for the parties.

---

[15] The parties would also have the option of consenting to the jurisdiction of Magistrate Judge Burke—who also has a familiarity with counsel, the parties, and the properties—for purposes of participating in a jury trial before her.

Having considered all of the relevant factors, and given the particular facts and posture of this case, the Court concludes that the appointment of a commission is not warranted and therefore DENIES Rover's renewed motion to appoint a commission. The Court shall, by separate order, issue a jury trial schedule for the remaining issues of just compensation in this case.

**IT IS SO ORDERED**.

Dated: May 9, 2018

**HONORABLE SARA LIOI**
**UNITED STATES DISTRICT JUDGE**